UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

CHARLES W. FRANCIOL, JR.   CIVIL ACTION NO. 20-0033

VERSUS   JUDGE SUMMERHAYS

U.S. COMM'R S.S.A.   MAGISTRATE JUDGE WHITEHURST

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be REVERSED and that this matter be REMANDED to the ALJ for further consideration in light of new evidence not previously considered.

### ADMINISTRATIVE PROCEEDINGS

The claimant, Charles W. Franciol, Jr., filed the instant appeal, seeking judicial review of the March 25, 2019 decision of the ALJ that he was no longer disabled as of July 15, 2015. Franciol was initially approved for disability benefits beginning on August 15, 2004 based upon degenerative disc disease of the lumbar spine. The claim was thereafter reviewed and it was determined that the claimant's condition had improved; benefits were ceased effective July 15, 2015. The claimant appealed and a hearing was held on April 26, 2018 before ALJ Holly Hansen. The

ALJ issued an unfavorable decision on March 25, 2019.[1] A timely appeal was taken from the ALJ's decision and the Appeals Council also denied the appeal on December 2, 2019.[2] Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born in 1983. The most recent favorable medical decision finding plaintiff was disabled [the "Comparison Point Decision"] is the decision dated August 22, 2006, at which time the claimant was 23 years old. The claimant was 31 years old on July 5, 2015, the date his benefits were ceased. He is considered a "younger individual" under the Social Security guidelines. He has a high school education and one year of college. The claimant has no past relevant work.

Two months after the ALJ issued her unfavorable decision, the claimant submitted new evidence to the Appeals Council, which determined – without reviewing the evidence – that the new evidence would not change the outcome of the ALJ's decision. The claimant challenges this finding of the Appeals Council, and further argues that there is not substantial evidence in the record to support the ALJ's residual functional capacity assessment based upon the evidence the ALJ

---

[1] Tr. 10-20.
[2] Tr. 1-3.

considered. The claimant also argues the ALJ improperly failed to consider evidence that was dated after March 27, 2017 but was submitted prior to his hearing.

## ANALYSIS

### A. STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[3] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[5]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[6] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[7]

---

[3] *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[4] *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).
[5] *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).
[6] 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).
[7] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[8] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[9]

**B.    Entitlement to Benefits**

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[10] Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[11]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[12] A

---

[8] *Martinez v. Chater*, 64 F.3d at 174.
[9] *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.
[10] See 42 U.S.C. § 423(a).
[11] 42 U.S.C. § 1382(a)(1) & (2).
[12] 42 U.S.C. § 1382c(a)(3)(A).

claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[13]

### C. Evaluation Process and Burden of Proof

The Social Security Administration may terminate benefits if the agency concludes, after reviewing a claimant's case, that the claimant's impairment "has ceased, does not exist, or is not disabling...." 42 U.S.C.A. § 423(f). In a typical social security case, where the issue is whether a claimant is disabled and should therefore be granted Social Security benefits in the first place, the Commissioner (through an ALJ) applies a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010). In cases such as this, however, where the Commissioner is deciding whether to terminate existing benefits due to an alleged medical improvement, 20 C.F.R. § 404.1594(f) prescribes an eight-step evaluation process to determine:

(1) whether claimant is engaging in substantial gainful activity;

---

[13] 42 U.S.C. § 1382c(a)(3)(B).

(2) if not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listing;

(3) if impairments do not meet a listing, whether there has been medical improvement;

(4) if there has been medical improvement, whether the improvement is related to the claimant's ability to do work;

(5) if there is improvement related to claimant's ability to do work, whether an exception to medical improvement applies;

(6) if medical improvement is related to the claimant's ability to do work or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment;

(7) if the claimant has a severe impairment, whether the claimant can perform past relevant work; and

(8) if the claimant cannot perform past relevant work, whether the claimant can perform other work.

*Spearman v. Comm'r of Soc. Sec.*, 84 F. Supp. 3d 531, 534–35 (N.D. Miss. 2015).

### D. THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ applied the eight-step analysis and made several findings as part of that analysis, including the following: The claimant had not engaged in substantial gainful employment through the date of her decision; the medical evidence establishes that, since July 5, 2015, the claimant has had the medically determinable impairments of degenerative disc disease of the lumbar spine, hypertension, status post gastric sleeve, hepatitis steatosis, hiatial hernia, seizure incident, history of substance use, bipolar affective disorder, anxiety disorder,

attention deficit hyperactivity disorder, and posttraumatic stress disorder; none of the foregoing impairments or combination of impairments meet or medically equal a listed impairment; medical improvement occurred on July 5, 2015; and the claimant's medical improvement is related to the ability to work because it has resulted in an increase in the claimant's residual functional capacity. The ALJ determined that the claimant has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), except he can only occasionally kneel, stoop, crouch, crawl, and climb ramps and stairs; he can never climb ladders, ropes, or scaffolds; and he can perform unskilled work as defined by the Dictionary of Occupational Titles (DOT) with few, if any, changes in a routine work setting (Tr. 15).

After consulting the vocational expert ("VE") VE during the hearing regarding this RFC, the claimant's age (31 as of July 5, 2015), education (at least high school), and no past relevant work, the ALJ found that, beginning July 5, 2015, the claimant could perform other work that exists in significant numbers in the national economy, including microfilm document preparer, addressing clerk, and surveillance system monitor (Tr. 19, 56). Accordingly, the ALJ found that claimant's disability ended July 5, 2015, and he had not become disabled again after that date (Tr. 20).

### E.  THE ALLEGATIONS OF ERROR

The claimant alleges that the following errors occurred:

- the Appeals Council erred in not considering the evidence submitted after the hearing;

- the ALJ erred in concluding that the claimant has the residual functional capacity to perform sedentary work with limitations;

- the ALJ erred in failing to consider evidence dated after March 27, 2017.

The undersigned will address each of the claimant's assignments of error in turn.

### The Decision of the Appeals Council

The claimant argues that the Appeals Council erred in failing to consider the new evidence submitted by the claimant after his administrative hearing.

Pursuant to 20 C.F.R. §404.935(a) (2017), a party must submit or inform the ALJ of all written evidence at least five business days before a hearing (the "five-day requirement"), although there are exceptions to the rule. These exceptions include: (1) agency action misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation that prevented him from informing the agency about or submitting the evidence earlier; or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented him from informing the agency about or submitting the evidence earlier. Examples include, but are not limited to: (i) the claimant was seriously ill, and the illness

8

prevented him from contacting the agency; (ii) there was a death or serious illness in the immediate family; (iii) important records were destroyed or damaged by fire or other accidental cause; or (iv) the claimant actively and diligently sought evidence from a source and the evidence was not received or was received less than five business days prior to the hearing. 20 C.F.R. § 404.935(b).

The new evidence sought to be introduced is attached as Exhibits A and B to the claimant's brief. Exhibit A contains a neurosurgical operative report from Neurosurgical Group of Texas, showing that the claimant underwent an L4-5 minimally invasive left hemilaminectomy including facetectomy and foraminotomy on October 4, 2018. The remaining documents are follow-up treatment notes after the surgery. The cover page of this exhibit shows that the claimant did not sign an authorization for the release of these records until May 14, 2019, which was approximately two months after the ALJ's decision. Exhibit B contains treatment notes from Greater Houston Interventional Pain Associates dated June 21, 2018 and September 27, 2018 – prior to the claimant's surgery – as well as urine lab results dated June 21, 2018 and a letter of non-coverage for a Chantix prescription. The record further shows that claimant's counsel sent Exhibit A to the Appeals Council on May 23, 2019 and Exhibit B on May 29, 2019.

The Appeals Council denied review of the claimant's claim on December 2, 2019 and specifically noted the following with respect to the new evidence submitted by the claimant after the ALJ's decision was rendered:

> You submitted records from Interventional Pain Associates, dated June 21, 2018 through September 27, 2018 (25 pages) and from Neurosurgical Group of Texas, dated November 30, 2017 through November 6, 2018 (30 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.[14]

At his administrative hearing, claimant's counsel was asked if he had had an opportunity to review the exhibits in the record and was asked if he had additional exhibits to submit. At that time, counsel stated that the records "[were] as complete and up to date as we can get them." [Tr. 31]. The claimant does not argue that one of the regulatory exceptions prevented him from submitting the evidence earlier, but rather, argues that the new evidence simply was not available until after the surgery, which was performed on October 4, 2018, and after the ALJ's decision, which is dated March 25, 2019.

To succeed on a claim that a remand is appropriate to consider evidence that was not previously considered, a claimant must show that: (1) there is new, noncumulative evidence; (2) the evidence is "material," that is, relevant and probative so there is a reasonable possibility that it would change the administrative

---

[14] See Tr. 2.

10

result; and (3) there is good cause for the failure to submit the evidence at the administrative level. *See, e.g., Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995) (new evidence must also pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling.), *citing Bradley v. Bowen*, 809 F.2d 1054, 1057-58 (5th Cir. 1987). *See also Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218–19 (11th Cir. 2001).

In *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995), the Fifth Circuit addressed the issue of good cause for failure to submit medical evidence of a surgery that occurred after the ALJ's decision. In explaining that good cause had been satisfied, the court explained:

> Finally, there is good cause for the failure to include this evidence in the initial proceedings. Although evidence obtained after the ALJ's decision does not automatically satisfy the good cause requirement just because of its recent origin,[15] Ripley had a legitimate reason why this evidence was not produced earlier. Major medical procedures such as back surgery are not entered into lightly. Ripley's complaints of pain had to be examined and evaluated to determine what medical treatment was best for Ripley. Ripley could not just walk into the hospital and receive back surgery on demand. Although back surgery had been suggested on two occasions before the ALJ's decision, the ultimate judgment as to whether back surgery was necessary and when it should be performed rested with the treating physicians. In 1994, after the ALJ had denied Ripley's disability claim, Ripley's doctor felt that the surgery was necessary. Because the qualified judgment of Ripley's doctors was responsible for the delay in the availability of evidence relating to the scar tissue, we conclude that Ripley has demonstrated good cause for failing to produce this evidence during the initial hearings.

11

In the instant case, the possibility that the claimant would require surgery was discussed at the administrative hearing:

> Q (ALJ): What type of surgery has your doctor recommended, the lumbar surgery?
> A (clamant): Yes, she does want to do the – I forget what it's called. Do you remember what it's called?
> [ . . . ]
> A: Yes, she does want to do a surgery on my L3-4 or was it my L4-5 vertebrae, she wants to do something there. She thinks she can take my pain level from like, where it's usually around an eight, she thinks she can drop it down to like, a three or four with the surgery. So, I've been avoiding that for so long, and now that – I think it's time I probably should get it done.
> [ . . . ]
> Q: And the lumbar surgery, is that something that you plan to undergo?
> A: I need to. Yes, ma'am.
> Q: And is it scheduled yet?
> A: It's not scheduled because I don't have the insurance.[15]

In her decision, the ALJ states that "[d]uring a neuropsychological evaluation, the claimant reported that providers recommended back surgery; however, the evidence shows no surgical recommendations."[16]

It is clear that the new medical evidence in this case contains medical records from 2017, and it is unclear to the undersigned why those records were not submitted by the claimant prior to the hearing on April 26, 2018. Nevertheless, the new evidence also includes records that are dated after the date of the hearing – and which

---

[15] Tr. 36-37.
[16] Tr. 16.

report the claimant's back surgery and follow-up treatment – and those records are relevant to the time period for which the claimant seeks benefits. For obvious reasons, those records were not considered by the ALJ. With respect to those records, the claimant argues that they were not available to him until after the ALJ issued her decision.

In *Riley*, the Fifth Circuit found that there was good cause to remand a matter to the ALJ to consider surgery records where the claimant decided to have surgery *after* the hearing. Here, the claimant's surgery was indeed contemplated before the hearing, but did not take place until after the hearing. The delay in obtaining those records was impacted, for certain, by the fact that the claimant did not have insurance to cover the surgery at the time of the hearing. Thus, after considering the remand factors, the undersigned concludes that the evidence not considered by the Appeals Council is new and material, and the claimant satisfies his burden of showing that there is good cause for failing to submit it before the hearing. This new evidence contradicts the findings of the ALJ, who stated in her decision that surgery was not recommended. Considering the foregoing, the claimant fulfills the requirements for a remand of this case for consideration of the medical evidence not previously considered.

**Residual Functional Capacity**

The claimant argues that the ALJ erred in concluding that the claimant has the residual functional capacity to perform sedentary work with limitations. Specifically, the claimant argues that the ALJ ignored the claimant's physical limitations and the amount of time he would be required to miss work because of his pain.

At the administrative hearing, claimant's counsel questioned the VE about a hypothetical claimant with the claimants' age, education, and work experience who can perform light work, occasionally kneel, stoop, and crawl, occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, and can perform unskilled work as defined by the DOT, with few, if any, changes in a routine work setting, with the further restriction that the individual would miss more than two days from work each month due to exacerbation of his physical and/or mental problems, which would be caused by work stress alone. The VE testified that there would be no full-time competitive jobs for such an individual. The claimant argues that the ALJ ignored the limitation of having to miss work for two days per month and the concept of "good days and bad days," and chose not to put any "time or efficiency" limitations on the claimant's ability to work in assessing his RFC.

In making this argument, the claimant relies on his testimony at the hearing as well as the new evidence he submitted after the hearing. In response, the

Commissioner relies upon "numerous" records showing the claimant had normal gait, minimal pain with very few adverse findings on examination, normal range of motion, strength, and the ability to exercise. However, in his reply brief, the claimant points out that the Commissioner has not accurately argued the medical evidence in its brief. Specifically, the claimant argues the following evidence shows limited or decreased range of motion rather than the normal range of motion argued by the Commissioner:

- January 13, 2016 – limited range of motion[17]
- February 27, 2016 – decreased range of motion in the back[18]
- June 18, 2016 – decreased range of motion in the back[19]
- March 3, 2017 – generalized tenderness[20]
- November 30, 2017 – MRI showed marked spondylosis degenerative change at L4-5[21]

The claimant also argues that the ALJ's findings that surgery was not recommended and that the claimant had effectively managed his pain with over the counter medication and/or had ceased taking pain medication altogether are not supported by substantial evidence.[22] On this point, the claimant argues that the

---

[17] Tr. 453.
[18] Tr. 461.
[19] Tr. 484.
[20] Tr. 850.
[21] Tr. 954.
[22] Tr. 16-17.

newly submitted evidence shows that surgery was recommended – and actually occurred -- and that surgery was needed because the claimant's attempts at pain management failed to adequately reduce his pain to a manageable degree.[23] Specifically, the claimant testified that he has had 3 epidural injections, physical therapy, and a regimen of pain medication, none of which gave adequate pain relief.[24]

Given that the November 30, 2017 MRI showed marked spondylosis degenerative change at L4-5 for which the claimant ultimately underwent surgery, as well as the treatment notes evidencing limited range of motion and generalized back tenderness, the undersigned concludes that the ALJ's RFC assessment, which does not include limitations for having to miss work two days per month because of pain, is not supported by substantial evidence in the record. On remand, the ALJ shall consider the new evidence in assessing the claimant's RFC for the relevant time period.

### Evidence dated after March 27, 2017

Finally, the claimant argues that the ALJ erred in failing to consider evidence dated after March 27, 2017 and points to two specific records in this regard – the

---

[23] See Exhibit A and Exhibit B, pp. 42-43.
[24] Tr. 43-46; Exhibit A.

16

surgery report for the claimant's back surgery and the 2018[25] report Kate Doucet of the Jefferson Neurobehavioral Group.

For obvious reasons, the ALJ did not err in failing to consider the surgery report, because the surgery had not taken place before the ALJ's hearing. With respect to the report of Kate Doucet, without additional argument and/or the specification of additional medical records based on mental impairments, the undersigned is unable to determine whether the claimant's mental health has deteriorated. The claimant was found to be disabled beginning in 2004 based upon his degenerative disc disease of the lumbar spine. Social security benefits were not awarded for his mental impairments. The report of Kate Doucet does not demonstrate, standing alone, that the claimant has a disabling mental impairment, but rather, indicates that the claimant may suffer from a personality disorder for which treatment is recommended.[26] Ms. Doucet diagnosed the claimant with an unspecified personality disorder, ADD/ADHD, and bipolar II disorder by history, for which treatment was recommended. To the extent that the claimant is arguing this report evidences deteriorating mental health impairments, the claimant has not

---

[25] Tr. 615-36. The copy of this report that is included in the administrative record is so blurry as to be almost illegible. However, the undersigned was able to read several portions and has considered those portions herein. The specific dates of the evaluation, however, cannot be read by the Court.
[26] Tr. 634-36.

17

sufficiently cited earlier evidence in the record by which to measure whether the claimant's mental impairments have worsened.

Additionally, this report is generally consistent with the findings of the ALJ in her March 25, 2019 decision. In that decision, the ALJ concluded that while the claimant has been treated for bipolar affective disorder, anxiety disorder, ADHD, and PTSD, he has obtained effective treatment and had only mild to moderate findings. Standardized testing showed findings within normal limits, and the medical records show no recent hospitalizations for mental impairments. The records further show that providers had discontinued mental health therapy due to the claimant's noncompliance with prescribed treatment.

Thus, to the extent the claimant is arguing that the ALJ erred in failing to consider post-March 2017 medical evidence, including the claimant's surgical records, the undersigned agrees and has already determined that remand is the appropriate remedy for that error. However, to the extent the claimant is arguing the ALJ erred in failing to determine that the claimant has a disabling mental impairment based upon the report of Kate Doucet, such argument is not persuasive.

### CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned finds that the ALJ's findings are not based on substantial evidence in the record. Accordingly, **IT IS RECOMMENDED** that the decision of the Commissioner be REVERSED and that

this matter be REMANDED to the ALJ for further consideration in light of the new evidence not previously considered. Upon remand, the ALJ shall consider, *inter alia*, the new evidence in assessing the claimant's RFC for the relevant time period.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE in Chambers on this 26th day of July, 2021.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE